544 So.2d 767 (1989)
STATE of Louisiana, Plaintiff-Appellee,
v.
Jesse JOHNSON, Jr., Defendant-Appellant.
No. CR 88-1138.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1989.
*768 Vernon B. Clark, Asst. Dist. Atty., Leesville, for defendant-appellant.
F. Clay Tillman, Jr., Leesville, for plaintiff-appellee.
Before STOKER, YELVERTON and KNOLL, JJ.
KNOLL, Judge.
The issue on appeal is whether the State's untimely delivery of evidence sought through discovery which ultimately led to exculpatory evidence, renders defendant's guilty plea constitutionally infirm, in that his plea was not voluntary.
The defendant, Jesse Johnson, Jr., was charged by bill of information with one count of distribution of counterfeit marijuana, a violation of LSA-R.S. 40:966 A(2), and one count of distribution of marijuana, a violation of LSA-R.S. 40:966 A(1).
During the presentation of the defense, the State showed defendant a copy of defendant's arrest report on the charge of soliciting prostitution in Leesville. Defendant and his witnesses testified that he was not in the Leesville area on the date of the offense. The arrest report showed otherwise. Upon this development, defendant immediately entered into a plea bargain with the State. He pleaded guilty to the charge of distribution of marijuana. In exchange the State agreed to nolle prosse the charge of distribution of counterfeit marijuana, and further agreed not to bring perjury charges against defendant, his mother, and fiancée for testimony given during the course of trial.
Within days after entering his guilty plea, defense counsel, utilizing the information in the arrest report provided by the State during trial, obtained a jailer's record in Leesville. The jailer's record affirmatively established that defendant could not have committed the crime of distribution of counterfeit marijuana on September 12, 1986, the alleged date on which the first charged crime was committed, because he was incarcerated in the Leesville City Jail from the time he was arrested, September 11, 1986 until September 13, 1986. Accordingly, prior to sentencing, defendant filed motions to set aside his guilty plea and for a new trial, contending that his guilty plea was not voluntary, and that the jailer's record called into question the testimony of the State's sole identifying witness which also connected him to the second charge. This witness testified at trial that she was positive the person who sold her the marijuana in September was the same person who sold her marijuana in October (the second offense). Following a hearing, the trial court denied defendant's motions and, after receiving a pre-sentence investigation report, sentenced defendant to serve six years at hard labor.[1]
For reasons which follow, we find defendant's guilty plea constitutionally infirm in that it was not voluntary for failure of cause in the plea bargain contract. We therefore reverse his conviction, vacate and set aside his sentence, and remand for further proceedings.

FACTS
As part of a drug suppression effort between the City of Leesville and Vernon Parish, Theresa Rushing, a reserve officer *769 of the Vernon Parish Sheriff's Office, and Wade Sheppard, a private individual, were driving through the "crossing area" in Leesville on September 12, 1986, attempting to purchase narcotics from anyone who approached them. Around 6:15 that evening, a black male stopped them, asking if they wanted to buy a quantity of marijuana. After he showed them a bag of alleged marijuana and they casually examined it, Officer Rushing purchased the marijuana for $20. After making the purchase, Officer Rushing returned to the Vernon Parish Sheriff's Office and turned in the purchase to one of the commanding officers of the drug suppression team. At that time, Officer Rushing provided a description of the alleged perpetrator. Later, chemical analysis revealed that the small bag contained counterfeit marijuana.
On October 11, 1986, Officer Rushing, this time accompanied by her neighbor, Mike Burrows, was again driving through the "crossing area" around midnight as part of the drug suppression operation, attempting to purchase narcotics. She testified that a black male, who was the same one who had sold her the counterfeit marijuana on September 12, 1986, stopped her, asking if she was looking for marijuana. After Officer Rushing responded affirmatively, she paid $20 to the black male who then handed her a bag of what appeared to be marijuana. She again brought the bag of suspected marijuana to the drug suppression team at the Sheriff's Office and gave them the same description of the seller as she gave on September 12, 1986. Subsequent chemical analysis revealed that the bag contained 3.9 grams of marijuana. At both purchases, Officer Rushing was sitting in the car while the black male leaned into the car window to transact the drug deal.
Defendant was arrested on February 13, 1987, and charged with the two offenses outlined hereinabove.
During the State's case, Officer Rushing identified defendant as the person who sold her the suspected marijuana on both occasions. She testified that a short time after the second purchase she recognized the defendant as a member of her National Guard unit, and also identified him from a photograph provided by the Leesville City Police approximately one week after the second marijuana purchase.
As alluded to earlier, during the presentation of the defense, defendant, his fiancée, and his mother testified that defendant was not in Vernon Parish during September and October 1986. As revealed by defendant's testimony at the hearing on his motion to withdraw his guilty plea, after defendant's fiancée testified, the State provided the defendant with a copy of an arrest report which showed that, contrary to the testimony of defendant, his mother and fiancée, he was in Vernon Parish on September 12, 1986, because he was arrested by the Leesville City Police in Leesville for soliciting prostitution on September 11, 1986. After briefly recessing the jury trial, defendant then entered a plea of guilty to the distribution of marijuana which occurred on October 11, 1986, and entered the plea bargain outlined hereinabove.
At the hearing on defendant's motions for a new trial and to set aside his guilty plea, the defendant presented the testimony of Buck Massey of the Leesville Police Department who identified records which reflected that defendant was arrested on September 11, 1986, in Leesville, that he was incarcerated in city jail on September 12, 1986, and that he posted bond on September 13, 1986. At this hearing, the defendant maintained his innocence to the charge of distribution of marijuana on October 11, 1986, the charge to which he earlier pleaded guilty, and testified that his guilty plea was entered because he was intimidated by the perjury charges which might have been filed against him, his mother, and fiancée.
The trial court concluded that the motion for new trial was improper because defendant pleaded guilty before the conclusion of his jury trial. The trial court denied his motion to set aside his guilty plea because it felt that whether defendant recalled what he was doing on September 12, 1986, was irrelevant to the offense of October 11, 1986, to which he pleaded. Furthermore, *770 the trial court found that defendant presented no evidence that he was not in Leesville on October 11, 1986, the date on which the crime he pleaded guilty to occurred. Accordingly, the trial court dismissed defendant's motions, finding that his guilty plea was knowingly, intelligently, and voluntarily entered.

MOTION TO SET ASIDE GUILTY PLEA
Defendant contends that the trial court improperly denied his motion to set aside his guilty plea, contending that there was enough evidence that he entered his guilty plea based, at least in part, on the thought that he and his witnesses testified untruthfully about his whereabouts in September and October 1986, but not realizing that such information also meant that the State's sole identifying witness, Officer Rushing, testified that the same person who sold her marijuana on September 12 and October 11, 1986, was defendant.
LSA-C.Cr.P. Art. 559 allows the trial court to permit the withdrawal of a guilty plea at any time prior to the imposition of sentence. The trial court is vested with a great deal of discretion in permitting the withdrawal of a guilty plea, but its discretion may not be exercised arbitrarily and can be corrected on appeal. State v. Bourgeois, 406 So.2d 550 (La.1981).
A plea bargain is a contract between the State and one accused of a crime. State v. Nall, 379 So.2d 731 (La. 1980); State v. Lewis, 539 So.2d 1199 (La. 1989). A long-standing rule of contract law is that consent of both parties is required for a valid contract. LSA-C.C. Art. 1927. Consent may be vitiated by error, fraud, or duress. LSA-C.C. Art. 1948. Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. LSA-C.C. Art. 1949. Furthermore, LSA-C.C. Art. 1950 provides:
"Error may concern a cause when it bears on the nature of the contract, or the thing that is the contractual object..., or the law, or any other circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation."
In the present case, the defendant in his discovery motion requested:
"8. Defendant requests that the State of Louisiana disclose any material or information which (1) tends to negate the guilt of the defendant as to the offense charged, or (2) would tend to reduce the punishment therefor, or (3) any other evidence favorable to the accused.
9. If the State of Louisiana has any information of any nature, kind or description with respect to any other arrests or convictions of defendant then, and in that event, defendant requests to be given all of such information and, particularly, any and all reports, records, documents, `rap-sheets', and other data which the State may officially obtain.

* * * * * *
16. Does the State have in its possession, custody or control, any books, papers, statements, documents, photographs, tangible objects, buildings, places or copies, or portions thereof, which are favorable to the defendant, or which are material or relevant to the issue of guilt or punishment or intended for use by the State as evidence at the trial or were obtained from or belong to the defendant? If so, defendant moves to require the State to authorize the defendant to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce said documents and tangible objects.

* * * * * *
27. Did the State obtain or does the State have any exculpatory evidence, or evidence favorable to the defendant and, if so, defendant moves to require the State to furnish him said exculpatory evidence."
In response to defendant's discovery motion, the State answered that it did not have a copy of defendant's record, and did not have any information favorable *771 to defendant. Nevertheless, pursuant to the directive of LSA-C.Cr.P. Art. 729.3, the State had a continuing duty to disclose, and the jurisprudence holds that if the State does not comply with its discovery obligation, a defendant's conviction may be reversed if such non-compliance prejudiced defendant. State v. Vaccaro, 411 So.2d 415 (La.1982).
Exculpatory evidence must be provided to the defense when it is material to guilt or punishment, regardless of the good or bad faith of the prosecutor. State v. Johnson, 426 So.2d 95 (La.1983); Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). When the reliability of a given witness may well be determinative of guilt or innocence, non-disclosure of evidence affecting credibility falls within this general rule. State v. Hocum, 456 So.2d 602 (La.1984); Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). When there is a general request for undisclosed evidence which may constitute Brady material, reversible error results when the undisclosed evidence, considered in the context of the entire record, creates a reasonable doubt that did not otherwise exist. State v. Willie, 410 So.2d 1019 (La.1982), U.S. Cert. Denied, 465 U.S. 1051, 104 S.Ct. 1327, 79 L.Ed.2d 723 (1984).
At the hearing to set aside defendant's guilty plea, the State said that it shared the information relative to defendant's September 11, 1986, arrest by the Leesville City Police for soliciting prostitution with defense counsel at trial "the moment I received it". Defense counsel stated at the hearing that although he received a copy from the State of defendant's rap sheet some weeks prior to trial, the Leesville municipal charge against defendant was not listed, and that when he received notice of that charge from the State at trial, the significance of this information and its bearing on the case was not immediately discernible.
With that background, the case sub judice requires us to closely examine the propriety of defendant's guilty plea in light of: (1) the State's seemingly good faith delivery of evidence sought in discovery, on the heels of defense counsel's realization of possible perjured defense testimony and at a time, almost at the end of the jury trial, when the defense could not effectively develop that evidence for presentation to the empaneled jury; (2) conclusive evidence developed from the information provided by the State during trial that defendant was not the perpetrator of the crime of distribution of counterfeit marijuana, the offense which the State "bargained" to nolle prosse; and, (3) identification evidence, the crucial element of proof in the State's case in chief against defendant which was not clear, and which was severely damaged by the information developed from the State's disclosure at trial.
Since neither Wade Sheppard nor Mike Burrows, the two individuals who accompanied Officer Rushing on her two excursions into the "crossing area", testified, the State's case against defendant rested solely on the identification testimony of Officer Rushing.
In the course of trial, numerous discrepancies existed between the defendant's physical features and Officer Rushing's subjective appreciation of those physical traits at the time of the two marijuana purchases. Officer Rushing described the perpetrator as a black male having a medium dark complexion, being 5'6" to 5'8" tall, weighing 115 to 125 pounds, having sideburns, a mustache, short black hair, and a gold tooth in the upper right portion of his mouth. At the time of defendant's arrest on February 13, 1987, defendant testified that for approximately one year prior to his arrest he had long hair, he was 5'10½" tall, weighed approximately 150 pounds (a weight he testified to as being fairly consistent), that he had a beard, mustache, and thin sideburns, and he had a gold tooth in the upper right portion of his mouth. Thus, there were glaring differences in defendant's description.
Officer Rushing testified that although she is not a good judge of men's weight and that she could only approximate the perpetrator's height because he leaned over through the automobile window to make the drug sales, she maintained her identification *772 that the same man sold her the drugs at the time of both transactions. Officer Rushing, under direct examination by the State, said:
"Q. Okay. Did you get a clear look at the individual's face [on October 11, 1986]?
A. Yes, I did.
Q. Did you recognize the individual on the second transaction [October 11, 1986] as being the same one on September 12th of '6?
A. Yes, I did.
Q. Is there any doubt, in your mind, today, Ms. Rushing, that the same person was involved in the sale of the marijuana to you on both transactions?
A. No sir, there's not."
Notwithstanding Officer Rushing's steadfast affirmance of her identification, the State directly, but unknowingly, called the accuracy of her identification into question when it provided defendant with a copy of his September 11, 1986, arrest record in Leesville, and opened the way for defense counsel, albeit subsequent to the entry of defendant's guilty plea, to uncover evidence of the jailer's log which definitively established that defendant was incarcerated at the time Officer Rushing supposedly made the first marijuana purchase from defendant. Thus, the arrest report which the State first provided during trial led defense counsel to information which cleared defendant of the first offense and, because the State's only identification witness maintained that defendant sold her marijuana on both occasions, the exculpatory evidence developed shortly after trial further called into question the reliability of Officer Rushing's identification of defendant as the perpetrator of the second offense. Therefore, in light of State v. Willie, supra, it is clear that the discovery evidence tendered for the first time at trial was ultimately determinative of defendant's guilt or innocence and without it, defendant was severely prejudiced.
In State v. Nall, supra, our Supreme Court dissolved a plea bargain agreement because there was a failure of cause in the underlying agreement between the State and the defendant. In that case the court held that the State would not have entered into the plea bargain if it had known that the defendant's agreement to testify against a co-defendant was based on false testimony. Again, recently in State v. Lewis supra, our Supreme Court, relying on the concept of a failure of cause, dissolved a plea bargain because both the State and defendant signed the agreement "in the belief they had bargained for something other than what they were actually to get."
In the present case, defendant thought he was bargaining away a possible conviction for distributing counterfeit marijuana; actually, from the evidence later adduced, it was impossible for defendant to have committed that offense. Accordingly, he bargained away nothing. Likewise, the defense counsel's prompt development of the information disclosed by the State at trial underscores that if defendant had received the discovery material at a time when it could have been developed, he would not have entered his plea of guilty. Accordingly, we find that the agreement between the parties fell because of a failure of cause which renders his guilty plea not voluntarily made.
Therefore, although the trial court thoroughly boykinized defendant, fundamental fairness mandates that we hold that in light of the State's divulgence of the significant evidence during trial which led to the discovery of exculpatory evidence material to the issue of defendant's guilt or innocence as to both charges against him, the trial court erred in denying defendant's motion to withdraw his guilty plea.
In light of the facts presented herein, we likewise distinguish State v. Jenkins, 419 So.2d 463 (La.1982), a case heavily relied upon by the trial court. In Jenkins, the defendant produced three family members and a friend after he pleaded guilty, who testified that he could not have committed the crime because he had not yet arrived in town from working offshore. The date of the distribution of marijuana for which he was charged occurred on the defendant's brother's birthday. In denying defendant relief, the court in Jenkins noted that defendant and counsel knew of the date of *773 the offense for several months, and that his witnesses were readily available the entire time. Accordingly, the court denied the motion to withdraw his guilty plea, finding it difficult to conceive that the coincidence as to the date of the offense was only realized after the defendant pleaded guilty.
Unlike the subjective, familial testimony involved in Jenkins, in the present case, defendant's arrest report constituted discovery material to which defendant was entitled. Furthermore, when coupled with the city jailer's incarceration record, it provided strong, independently corroborated, reliable evidence that defendant could not have been the person who sold Officer Rushing the counterfeit marijuana on September 12, 1986, and that the reliability of her later identification on October 11, 1986, based on her testimony regarding defendant's involvement in the first offense was similarly questioned.
We likewise are not swayed by the State's argument in the trial court that, regardless of when it supplied defendant with a copy of his arrest report, defendant should have remembered that he had been arrested on the charge of soliciting prostitution and that he was incarcerated at the time of the first offense. Defendant was arrested five months after the first offense was supposed to have been committed, and his trial occurred approximately 20 months from the date of his alleged commission of that crime.

DECREE
For the foregoing reasons, we reverse the trial court's decision which denied defendant's motion to withdraw his guilty plea, reverse defendant's conviction, and vacate and set aside defendant's sentence. This case is remanded to the trial court for further proceedings consistent with the views expressed herein.
REVERSED; SENTENCE VACATED, AND CASE REMANDED.
NOTES
[1] Although defendant perfected three assignments of error in the trial court, in his appellate brief he waived his argument to his specification of error that the trial court erred in denying his motion for a new trial and, instead, relies solely on the two assignments which question the propriety of the trial court's denial of his motion to set aside his guilty plea.