589 So.2d 1079 (1991)
STATE of Louisiana
v.
Adrian C. WAGUESPACK.
No. KA 90 1412.
Court of Appeal of Louisiana, First Circuit.
October 18, 1991.
Rehearing Denied January 3, 1992.
*1080 Abbott Reeves, Asst. Dist. Atty., Donaldsonville, for appellee State of La.
James J. Zito, Baton Rouge, for appellant Adrian C. Waguespack.
Before SHORTESS, LANIER and CRAIN, JJ.
CRAIN, Judge.
Adrian C. Waguespack originally was indicted for distribution of cocaine. Pursuant to plea negotiations, the state amended the charge to conspiracy to possess with intent to distribute cocaine, a violation of La.R.S. 40:967(A)(1) and 14:26.[1] The state also dismissed seven other indictments. Defendant then pled guilty to the amended indictment. Before being sentenced, defendant filed a motion to withdraw his guilty plea. After receiving evidence on the motion, the trial court denied it and sentenced defendant to serve a term of seven years imprisonment at hard labor with credit for time served.
Defendant has appealed, urging error by the trial court in four assignments of error: (1) denial of motion to withdraw guilty plea; (2) denial of opportunity to introduce evidence at sentencing hearing; (3) imposition of excessive sentence and failure to follow the sentencing guidelines; and (4) withdrawal of sentence of intensive incarceration.
Because defendant pled guilty to the instant offense, the facts were not fully developed. The amended indictment alleges that, on October 16, 1988, defendant conspired with Larry Boudreaux to possess with intent to distribute less than one ounce of cocaine. The facts revealed at the guilty plea indicate that Larry Boudreaux called defendant and asked defendant if he *1081 could secure cocaine for Boudreaux. Defendant agreed and made a phone call. Because of previous dealings with Boudreaux, defendant assumed Boudreaux would distribute the cocaine to other people.
DENIAL OF MOTION TO WITHDRAW GUILTY PLEA
In the first assignment of error, defendant claims the trial court erred when it denied defendant's motion to withdraw guilty plea. Defendant specifically claims that had he known at the time of his guilty plea that a key state witness had recanted statements about defendant previously given to the authorities, he would not have pled guilty. Defendant complains that the state's intentional failure to disclose this exculpatory evidence was in violation of the state's obligations under the discovery provisions and should result in his guilty plea being set aside.
Prior to sentencing, defendant filed the motion to withdraw guilty plea. At the hearing held on the motion, defendant introduced the indictments and defense motions from the eight indictments with which defendant originally was charged. In each case, defendant had filed a discovery motion requesting inspection of tangible evidence favorable to defendant. Although the state's responses to these discovery motions were not introduced at the hearing, the assistant district attorney testified that he allowed defendant to view all of the evidence in the state's possession, pursuant to an "open file" discovery, and that in court, on August 22, 1989, he indicated on the record that the state had no evidence favorable to defendant.[2]
In connection with these discovery responses and open file discovery, the state allowed defendant to view a videotape (D-3) filmed in late 1988 at a hotel in New Orleans. Defendant introduced the tape at the hearing. It shows Steven Fontenot, Pat Rizzuto, and an undercover agent ("Tony") from the United States Drug Enforcement Agency discussing the possibility of a drug deal whereby "Tony" would sell ten to twelve kilograms of cocaine to defendant. On tape, Steven Fontenot implied that he had defendant's authority to inquire into the possible deal; however Fontenot also made it clear several times that he had no authority to actually enter into a deal on defendant's behalf, or to determine a particular price, at least at that time. He explained that defendant was not sure he wanted to enter into a deal with "Tony." Fontenot also stated that he did not want to be the middleman; he implied that he was not being paid anything by defendant. Eventually, all Fontenot agreed to do was to relay information to defendant. At the hearing, the assistant district attorney testified that he recalled having told defendant and defendant's attorney, during the plea negotiations, that the videotape could be used as the basis for additional prosecutions.
Also in connection with discovery, the state allowed defendant to view transcripts (D-2, S-1) of statements Steven Fontenot had made on February 23-24, 1989, to narcotics agents from the Ascension Parish Sheriff's Office and the assistant district attorney concerning defendant's involvement in the drug trade. In these lengthy statements, Fontenot provided information about two separate drug transactions potentially involving defendant: the New Orleans meeting with the D.E.A. agent (caught on videotape) in which Fontenot implied that he had defendant's authority and a deal in Memphis wherein defendant assisted a Memphis purchaser in contacting a Louisiana supplier/deliverer.
After the guilty plea, defendant contacted Steven Fontenot. At that time, Fontenot told defendant that some of the statements he had given to the authorities were *1082 not truthful. At the hearing, Fontenot testified that the implication he gave on the undercover videotape, that he was acting on behalf of defendant in New Orleans, was not true. He explained that defendant never asked him to go to New Orleans and that he went to New Orleans only because his roommate, Pat Rizzuto, would make money if Pat could get someone to deal with "Tony." Fontenot also explained that the reason he told the authorities during his statements, in February of 1989, that he had defendant's authority was that he was confused and tired of the questioning. Fontenot testified that, eight to ten days before he appeared before the grand jury, he told Lt. Jack Crittenden that some of the statements he made about defendant were untrue. He also told Lt. Crittenden that, at the time of his statement in February of 1989, he had been using drugs and was confused.
At the hearing, Lt. Crittenden, the Ascension Parish Sheriff's Office Narcotics Detective who handled defendant's cases, admitted that, in a brief meeting, Fontenot told him "that he felt in his heart that he wasn't an agent for [defendant] when he went to New Orleans." He also acknowledged that Fontenot stated that he was "messed up" when he gave the statements. Lt. Crittenden did not provide the assistant district attorney with the information about Fontenot's so-called "recantation"; and, thus, this information was not provided to the defense in a supplement to discovery responses.
In a written judgment, the trial court denied defendant's motion. The court rejected defendant's argument that the statements given by Steven Fontenot and the videotape were extremely damaging pieces of evidence and that Fontenot's subsequent statements to Lt. Crittenden contradicted the contents of the videotape and transcribed statements, thus making the subsequent statements rise to the level of exculpatory evidence which was unlawfully withheld. The court concluded that many of the statements made by Fontenot in Exhibit S-1 (which was provided to the defense) were exculpatory, rather than damaging, and, as a result, Fontenot's subsequent statements to Lt. Crittenden were not of "great import." The court also was convinced that defendant would not have changed his mind about pleading guilty had he been aware of the undisclosed evidence.
On appeal, defendant alleges that he would not have pled guilty had he known that Fontenot specifically recanted his statements that he had defendant's authority and called into question all of his statements by volunteering that he was under the influence of drugs at the time he made the transcribed statements. Defendant basically argues that, because the state violated its obligation to supplement its responses to discovery and because defendant relied on these inaccurate factual assertions, the error vitiates defendant's consent to the plea bargain agreement. As a result, the guilty plea should be set aside.
A trial court may permit the withdrawal of a guilty plea at any time before sentencing. La.C.Cr.P. art. 559(A). The court's decision is discretionary, subject to reversal only if that discretion is abused or arbitrarily exercised. State v. Hebert, 506 So.2d 863, 865 (La.App. 1st Cir.1987). Even after sentencing, if a trial court finds "either that a plea of guilty was not entered freely and voluntarily or that the Boykin colloquy was inadequate, and that the plea, therefore, is constitutionally infirm, the Trial Court retains the authority to vacate the sentence and set aside the plea." State v. Lewis, 421 So.2d 224, 226 (La.1982).
A defendant may not withdraw a guilty plea simply because the sentence to be imposed is heavier than anticipated. It is not unreasonable for a trial court to deny a defendant the luxury of gambling on his sentence, then withdrawing his plea if and when he discovers, before imposition, the sentence is not to his liking. State v. Banks, 457 So.2d 1264, 1266 (La.App. 1st Cir.1984) (citing State v. Deakle, 372 So.2d 1221 (La.1979)).
The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilty or punishment. *1083 Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963). In United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985), the United States Supreme Court established the following test for materiality:
The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.
See also State v. Dietrich, 567 So.2d 623, 631 (La.App. 1st Cir.), writ denied, 568 So.2d 1079 (La.1990).
A plea bargain is a contract between the state and one accused of a crime. State v. Nail, 379 So.2d 731, 733 (La.1980). In addition, a plea bargain induces the accused to waive important constitutional rights. Smith v. Blackburn, 785 F.2d 545, 548 (5th Cir.1986). In viewing a plea bargain as a contract, the Louisiana Supreme Court has evaluated guilty plea agreements under general Civil Code rules of obligations.
A long-standing rule of contract law is that consent of both parties is required for a valid contract. La.C.C. art. 1927. Consent may be vitiated by error, fraud, or duress. La.C.C. art. 1948. Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. La.C.C. art. 1949. Finally, the Civil Code provides:
Error may concern a cause when it bears on the nature of the contract, or the thing that is the contractual object..., or the law, or any other circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation.
La.C.C. art. 1950.
State v. Lewis, 539 So.2d 1199, 1204 (La. 1989). In State v. Johnson, 544 So.2d 767, 772 (La.App. 3d Cir.1989), the appellate court held that the trial court erred when it denied the defendant's motion to withdraw his guilty plea. Although the trial court had thoroughly advised the defendant of his constitutional rights during his guilty plea, fundamental fairness required that the plea be set aside because the state divulged "significant evidence" during the trial which caused defendant to plead guilty but which, after the plea, led to the discovery of exculpatory evidence material to the issue of defendant's guilt or innocence on the charge dismissed pursuant to the guilty plea.
In applying this law to the instant case, we agree with the trial court's reasoning and decision. The brief comments Fontenot made to Lt. Crittenden, allegedly retracting the earlier statements, were not material to the defense. At the hearing, the defense presented no evidence that defendant would not have pled guilty had he known the substance of Fontenot's statements given to Crittenden subsequent to the transcribed statements. Furthermore, even had defendant testified to that effect, it is unlikely he would have appeared credible on that point. Defendant was charged under eight indictments. None of the indictments were based on any statements made by Fontenot, and the events which took place in New Orleans (captured on the videotape) were not the subject of any of the indictments. The record contains no proof that defendant pled guilty even partially because of his fear that the evidence out of New Orleans would be used for an additional indictment or as other crimes evidence in the existing indictments. Additionally, the videotape is not an extremely damaging piece of evidence against defendant. While Fontenot is recorded as telling "Tony" that he had the authority to speak on defendant's behalf, he also admitted that he had no authority to enter into any sort of deal. Thus, Fontenot's attempt to restrict his statement of authority already was provided to defendant when he was allowed to view the videotape. The transcribed statements of Fontenot are even more revealing. On appeal, defendant argues that Fontenot denied having defendant's authority in the statements he gave on February 23, 1989, but that he changed his position out of frustration when the *1084 state authorities brought him back in for questioning on February 24, 1989. However, the transcripts do not support defendant's interpretation. Fontenot repeatedly limited the extent of his authorization, and his explanation of his authority in the transcribed statements (to "go see what these guys say" and report back to defendant) is similar to his testimony at the hearing held on the motion to withdraw guilty plea. Indeed, at the hearing, the testimony indicates that Fontenot never told Lt. Crittenden that he had lied about defendant or misrepresented the events. Fontenot's own description of the information he gave Lt. Crittenden when he "recanted" his statements is as follows:
BY [DEFENDANT'S ATTORNEY]:
Q. Mr. Fontenot, you told him that you wanted to get with him and basically tell him the truth with regards to your involvement; is that correct?
A. Uh-huh.
Q. With regards to that involvement, you're talking about the statements that were made concerning Adrian Waguespack?
A. Yeah.
Q. What did you do regarding the false information concerning Adrian Waguespack?
A. I don't
Q. Did you tell Crittenden about it all?
A. Well, Iwe went to a small office, and I think before anything was said, you know, I told him that I wasn't going to lie for anybody and that I was going to go tell the truth, and then he responded by saying "that's all we want you to do is tell the truth." And that's basically that's all that came out at that time.
Q. Did you in fact tell him the truth or eventually about what you had said about Adrian Waguespack?
A. The opportunity never did come up.
Q. You never told that what you said concerning Adrian Waguespack's authority was false?
A. I think it might have been said that, you know, some of the things I'd said in the tape that that I wasat that point I told him that I had been using drugs during that period. And that I had gotten confused and a lot of the things I really don't remember what I'd said, because things keptquestions were directed at me in different fashions. And, you know, I got confused about what was said and
Q. You told him that the statements you gave were affected by your drugs usage?
A. I told him that I had been using it at that time, and that, you know, that I just wanted to tell the truth.
Q. Did you in fact tell him that when you went down to New Orleans that you did not have authority to negotiate on behalf of Adrian Waguespack?
A. I don't think that came up.
While the defense attempts on appeal to make an issue of Fontenot's revelation of drug use at the time he gave the transcribed statements, this information does not rise to the level of importance which defendant attempts to ascribe to it. When Fontenot gave the transcribed statements, in February of 1989, he specifically denied recent drug use at the beginning of each day's proceedings. Lt. Crittenden, a trained narcotics detective, did not observe Fontenot to be under the influence of narcotics. Even if Fontenot had recently used drugs, his testimony at the hearing cited no specific false statements which resulted from his intoxicated condition.
Thus, the failure of the state to supplement its discovery responses prior to defendant's guilty plea does not vitiate defendant's consent to the plea agreement. The strength of Fontenot's statements was not the cause without which defendant would not have entered into the guilty plea; and there is no indication that, had the evidence been disclosed to the defense, the result of the guilty plea proceeding would have been different. See Bagley, 473 U.S. at 682, 105 S.Ct. at 3383; Lewis, 539 So.2d at 1204; Johnson, 544 So.2d at 772. Accordingly, *1085 defendant's assignment of error is without merit.

DENIAL OF OPPORTUNITY TO PUT ON EVIDENCE AT SENTENCING HEARING
In assignment of error number two, defendant alleges the trial court erred when it denied defendant the opportunity to introduce evidence at the sentencing hearing. Defendant explains that he should have been allowed to rebut several allegations contained within the presentence investigation report.
When a defendant timely moves for disclosure of the presentence investigation report, alleging with particularity that it contains false information detrimental to the defendant, the trial court errs if the contents (absent the source of confidential information) are not disclosed and the defendant given an opportunity to contradict or explain substantially prejudicial information. State v. Simmons, 466 So.2d 777, 779 (La.App. 4th Cir.1985) (citing State v. Trahan, 367 So.2d 752, 754 (La.1978)). See La.C.Cr.P. art. 877; State v. Coleman, 574 So.2d 477, 480-81 (La.App. 2d Cir.1991). However, on appeal, in the absence of proof in the record that the defendant timely requested the opportunity to rebut or explain "misinformation" contained within the PSI, there is no error if the trial court does not hold a hearing. See La.C.Cr.P. art. 841; State v. McGhee, 554 So.2d 145, 147-148 (La.App. 2d Cir.1989). See also State v. Boone, 364 So.2d 978, 983 (La. 1978), cert. denied, 444 U.S. 825, 100 S.Ct. 46, 62 L.Ed.2d 31 (1979).
In the instant case, defendant was allowed to view the PSI; and he filed a motion for a sentencing hearing. Although he did not specify any particular false or misleading information contained within the PSI, the trial court granted the motion and assigned the case for a sentencing hearing. However, when the matter came up, defendant specifically withdrew his prior request for a sentencing hearing and voiced no objection to the sentence imposed.
Now, in arguing this assignment, defendant completely ignores his withdrawal of the motion. In his brief on the third assignment of error, however, defendant alleges that he waived the sentencing hearing because the judge and probation officer had agreed to recommend him for the intensive incarceration program. In that assignment, defendant complains that the probation officer later withdrew the recommendation. Defendant also asserts that the trial judge "did not allow any evidence to be presented by the appellant in a sentence hearing." However, these allegations misstate the record and contain allegations of events not apparent in the record.[3] As a result of defendant's withdrawal of his request for a hearing, he has failed to properly present the complaint he raises in assignment of error number two.
Accordingly, the assignment of error procedurally is without merit.

EXCESSIVE SENTENCE AND FAILURE TO FOLLOW THE STATUTORY GUIDELINES
In his third assignment of error, defendant argues that the sentence imposed upon him was excessive. He asserts that the trial court relied unduly on his past and on the indictments which were nol prossed. Defendant also contends that the trial court did not adequately consider the following factors: that defendant was a first felony offender and, therefore, eligible for probation; that defendant's prior arrests were more than twelve years old; that defendant voluntarily sought treatment after the earlier arrests; and that defendant's wife and two children are dependent upon defendant for their support. Defendant seeks a recommendation by the trial court for the intensive incarceration program.
The maximum penalty for the offense of conspiracy to possess with intent to distribute cocaine is a term of imprisonment at hard labor for fifteen years and a fine of $7,500. See La.R.S. 14:26(C), 40:967(A)(1) and (B)(1). See also La.R.S. 40:979(A). *1086 Defendant's guilty plea was entered pursuant to an agreement with the judge and prosecutor that no fine would be imposed and that the maximum term would be ten years. Thus, defendant's sentence of seven years at hard labor is in compliance with both the statutory requirements and the limitations established in the plea agreement.
The trial court has wide discretion, though not unbridled, in the imposition of a sentence within statutory limits. See State v. Sepulvado, 367 So.2d 762, 767 (La.1979). Article I, Sec. 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. A sentence will be determined to be excessive if it is grossly disproportionate to the crime, or is nothing more than the needless imposition of pain and suffering. State v. Guiden, 399 So.2d 194, 200 (La.1981), cert. denied, 454 U.S. 1150, 102 S.Ct. 1017, 71 L.Ed.2d 305 (1982). The determination turns upon the punishment and the crime in light of the harm to society and whether or not the penalty is so disproportionate that it shocks our sense of justice. State v. Pearson, 425 So.2d 704, 705 (La.1982). A sentence may be excessive either by reason of its length or because the circumstances warrant a less onerous sentencing alternative. State v. Tate, 506 So.2d 546, 552 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987).
Given compliance with the sentencing criteria of La.C.Cr.P. art. 894.1, the sentence will not be set aside in the absence of manifest abuse of discretion. See State v. Washington, 414 So.2d 313, 315 (La.1982). La.C.Cr.P. art. 894.1 requires the trial court to weigh both aggravating and mitigating circumstances in imposing sentence. While the trial court is not required to articulate every such circumstance in imposing sentence, the record must reveal adequate consideration of the guidelines enumerated in article 894.1. State v. McGuire, 560 So.2d 545, 552 (La. App. 1st Cir.), writ denied, 565 So.2d 941 (La.1990).
Before imposing sentence in the instant case, the trial court reviewed the presentence investigation report prepared by the Louisiana Department of Public Safety and Corrections and an additional report prepared at defendant's request by a private firm. The court also examined numerous letters of reference and petitions submitted on defendant's behalf.
The extensive written reasons prepared by the trial court indicate that the judge adequately considered each of the factors cited by defendant on appeal. The trial court reviewed defendant's criminal record and noted defendant's prior substance abuse treatment. The court also determined that imprisonment would not entail an excessive hardship on defendant's wife and children because defendant's parents and his wife's parents were available to assist them. Additionally, the trial court specifically recommended defendant for the intensive incarceration program, after noting that an official with the Department of Corrections had determined that defendant was eligible for the program. (The agent who prepared the PSI initially did not recommend defendant for the program, apparently on the mistaken belief that charges still were pending against defendant.)
Defendant's argument that the trial court unduly relied on defendant's past and on the indictments which were nol prossed also is without merit. Consideration of a defendant's criminal record, as authorized by La.C.Cr.P. art. 894.1(B)(7), is not limited to convictions. See Washington, 414 So.2d at 315. Additionally, in a case where the offense to which the defendant had pled guilty inadequately describes the entire course of the defendant's criminal conduct, in imposing sentence the trial court may consider the benefit the defendant received pursuant to the plea agreement, particularly where the plea bargain results in a significant reduction in the defendant's potential exposure to imprisonment. See State v. Lanclos, 419 So.2d 475, 478 (La.1982).
Defendant's heavy involvement in illegal drug activities is apparent in this record. The seven indictments, which were nol-prossed, charged defendant with the following offenses:

*1087 (1) bill no. 3548(ct. 1) possession with intent to distribute (5 kilograms) cocaine and (ct. 2) distribution of (5 kilograms) cocaine, between November 1-28, 1988;
(2) bill no. 3549Aconspiracy to possess with intent to distribute (5 kilograms) cocaine, between November 1-28, 1988;
(3) bill no. 3550(ct. 1) conspiracy to possess with intent to distribute (46 pounds) marijuana and (ct. 2) conspiracy to possess with intent to distribute (80 pounds) marijuana, between August 1October 31, 1988;
(4) bill no. 35523 counts drug racketeering, between June 1, 1988February 21, 1989;
(5) bill no. 3845conspiracy to distribute (1 pound) cocaine, on October 28, 1986;
(6) bill no. 3846possession with intent to distribute (1 ounce) cocaine, on October 16, 1988; and
(7) bill no. 3848distribution of (1 ounce) cocaine, on December 1, 1988.
Additionally, even statements by defendant's own attorney during the guilty plea indicate that defendant had other deals with Larry Boudreaux in addition to the offense reflected in the instant indictment. These dismissed and unprosecuted charges, along with defendant's prior criminal record, and the additional reasons cited by the trial court, support the court's decision to imprison defendant for seven years.
The assignment of error is without merit.
DENIAL OF INTENSIVE INCARCERATION PROGRAM
In the final assignment of error, defendant asserts that the trial court arbitrarily withdrew its recommendation that defendant be committed to the intensive incarceration program. Defendant asserts that he agreed to withdraw his request for a sentencing hearing only because the judge and probation officer agreed to recommend defendant for admission to the intensive incarceration program. Defendant requests that he be allowed to present evidence at a sentencing hearing and that he then be allowed to enter the intensive incarceration program.
Again, as in his arguments in the second assignment of error, defendant misstates the record and relies on allegations outside the record. He claims the trial court withdrew its agreement to recommend defendant for participation in the intensive incarceration program. See La.R.S. 15:574.4(A)(2). However, at sentencing the trial court specifically stated, "[T]he Court will recommend the defendant for the intensive incarceration program." Additionally, to the extent defendant attempts to argue that the agent who prepared the PSI arbitrarily withdrew his agreement to recommend defendant for the intensive incarceration program (see La.R.S. 15:574.4(A)(2)(a)(ii)) and, thus, violated the plea agreement, defendant is relying on allegations of fact not contained within this record. The terms of the plea agreement were discussed extensively at the guilty plea. The possibility of defendant's admission into the intensive incarceration program was never mentioned, and the prosecutor and trial court repeatedly told defendant that a ten year period of imprisonment was a real possibility. Furthermore, at sentencing the trial court indicated that, although the PSI initially stated that defendant was not eligible for the program, a subsequent review by the agent who prepared the PSI determined that defendant was eligible for the program. Defendant ignores these facts in his brief.
Accordingly, assignment of error number four is without merit.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] In the indictment, the state cited the general conspiracy provision, La.R.S. 14:26. A specific provision for conspiracy to commit a violation of the Controlled Dangerous Substances Law is found in La.R.S. 40:979. However, the state's failure to use the specific citation in the instant case is not patent error. The Louisiana Supreme Court has held that conspiracy to commit a violation of the Controlled Dangerous Substances Law may be charged under either provision, especially where, as in this case, use of either provision provides for the same penalty. State v. O'Blanc, 346 So.2d 686, 689-90 (La. 1977). See La.R.S. 14:26 and 40:979(A).
[2] The date of this disclosure by the prosecutor actually was before the date on which defendant filed the discovery motions in the instant case. (The eight indictments were handed down in two separate groups on two different dates, February 21, 1989, and August 21, 1989. The instant indictment is part of the later group.) However, the prosecutor's testimony at the hearing implied that his response applied to all eight indictments, including the instant case, although the state's official disclosure occurred before defendant filed his discovery motions in the instant case.
[3] It is well-settled that appellate courts have no authority to review facts not contained in the trial court record. See State v. Swan, 544 So.2d 1204, 1209 (La.App. 1st Cir.1989).