616 So.2d 733 (1993)
STATE of Louisiana
v.
Larry BOUDREAUX.
No. 92 KA 0491.
Court of Appeal of Louisiana, First Circuit.
March 5, 1993.
Rehearing Not Considered, Not Timely Filed April 28, 1993.
*735 Donald D. Candell, Gonzales, Anthony Falterman, Dist. Atty., Donaldsonville, for The State.
Lennie Perez, Baton Rouge, for defendant Larry Boudreaux.
Before CARTER, LeBLANC and PITCHER, JJ.
PITCHER, Judge.
Shortly after being arrested for three counts of drug racketeering, violations of LSA 15:1353, Larry Boudreaux filed a motion for bond reduction. A few days later, the state charged Boudreaux by bill of information with one count of possession of cocaine with intent to distribute, a violation of LSA 40:967(A). The charged offense was based on the state's claim that, on January 12, 1989, defendant knowingly and intentionally possessed four grams of cocaine at his place of business, the Watering Hole Lounge in Ascension Parish, with the specific intent to distribute the substance to Larry Rowland. On the day after the bill was filed, defendant pled guilty as charged pursuant to a plea agreement; and the trial court ordered a presentence investigation report. Subsequently, the court sentenced defendant to serve a term of seven years at hard labor with credit for time served.
Defendant appealed his conviction, urging ten assignments of error, including the argument the court erred when it refused to hold a hearing on defendant's motion to withdraw guilty plea. Finding merit in this assignment, we vacated the sentence and remanded for an evidentiary hearing on the motion. State v. Boudreaux, 577 So.2d 1228, (La.App. 1st Cir.1991) (unpublished). On remand, a hearing was held; and the court again denied the motion. Defendant then filed a motion to correct the findings of fact upon which the court's ruling on the motion to withdraw guilty plea was based. The court denied this motion. Defendant also filed an additional motion to withdraw guilty plea on the ground of ineffective assistance of counsel. The court also denied this motion, whereupon defendant filed a motion to reconsider the court's denial of this motion to withdraw guilty plea. The court denied the motion to reconsider and sentenced defendant to the same period of imprisonment as before. Defendant has appealed, urging five assignments of error.
DENIAL OF MOTION TO WITHDRAW GUILTY PLEA
In four related assignments of error, defendant contests the court's denial of his motion to withdraw guilty plea and denial of related pleadings which were filed upon remand. In the first assignment, he argues the trial court erred when it denied the motion to withdraw guilty plea. Defendant claims the plea should be set aside because the state failed to comply with its agreement to recommend to the judge that *736 defendant receive probation and because the plea was involuntary as a result of improper threats made by the prosecutor.
On the day prior to his original sentencing, defendant filed a motion to withdraw guilty plea, in which he asserted specific allegations of intimidation, threats, and misleading statements made by the district attorney's office during the plea negotiations. He maintained he agreed to plead guilty and cooperate only because of this intimidation and a promise by the prosecutor to recommend to the court that defendant receive a suspended sentence with probation.
As we indicated in the original appeal, a trial court may permit the withdrawal of a guilty plea at any time before sentencing. La.C.Cr.P. art. 559(A). The court's decision is discretionary, subject to reversal only if that discretion is abused or arbitrarily exercised. State v. Hebert, 506 So.2d 863, 865 (La.App. 1st Cir.1987). Even after sentencing, if a trial judge finds "either that a plea of guilty was not entered freely and voluntarily or that the Boykin colloquy was inadequate, and that the plea, therefore, is constitutionally infirm, the Trial Court retains the authority to vacate the sentence and set aside the plea...." State v. Lewis, 421 So.2d 224, 226 (La.1982).
A defendant may not withdraw a guilty plea simply because the sentence to be imposed is heavier than anticipated. It is not unreasonable for a trial judge to deny a defendant the luxury of gambling on his sentence, then withdrawing his plea if and when he discovers, before imposition, the sentence is not to his liking. State v. Banks, 457 So.2d 1264, 1266 (La.App. 1st Cir.1984) (citing State v. Deakle, 372 So.2d 1221 (La.1979)). However, if a plea rests in any significant degree on an agreement or promise by the prosecutor so that it can be viewed as part of the inducement or consideration for the plea, such promise must be fulfilled, or the defendant given an opportunity to withdraw the plea. Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971); State v. Bosworth, 415 So.2d 912, 927 (La.1982) (on rehearing); State v. Atley, 470 So.2d 621, 622 (La.App. 1st Cir.1985). The state's agreement to recommend probation is enforceable even if the trial court indicates the prosecutor's recommendation would not have influenced the sentence. Bosworth, 415 So.2d at 927. A defendant seeking to withdraw his guilty plea on the ground the state failed to recommend probation as agreed must establish that (1) prior to the plea, he in fact believed the district attorney would recommend probation; (2) his belief was reasonable under the overall circumstances; and (3) his belief played a substantial role in inducing him to plead guilty. State v. Bosworth, 451 So.2d 1070, 1073 (La.1984).
A guilty plea must be entered knowingly and voluntarily. See Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). See also State v. White, 517 So.2d 461, 462 (La.App. 1st Cir.1987), writ denied, 521 So.2d 1184 (La.1988). In Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the United States Supreme Court established the following standard for the voluntariness of a guilty plea:
"[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)."
397 U.S. at 755, 90 S.Ct. at 1472 (quoting Shelton v. United States, 246 F.2d 571, 572 n. 2 (5th Cir.1957) (en banc), rev'd on other grounds, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958)). See also Mabry v. Johnson, 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984).
At the hearing held on remand, defendant testified that, after his arrest, law enforcement officers approached him several times while he was incarcerated, trying to get his cooperation. They told him *737 that, if he cooperated, he would be released from jail. They also threatened that, if he did not assist them in other cases, his fiancée might be arrested. After defendant had been held in jail for about two weeks, unable to post the $250,000 bond, an attorney who was his mother's friend, Robert Fuhrer, agreed to represent defendant at a bond reduction hearing. Defendant desperately wanted to be released from jail, but his family was unable to post the bond. Eventually, defendant was taken to what he thought was going to be a bond reduction hearing. However, he was taken to the district attorney's office for a meeting with Assistant District Attorney Abbot Reeves. Attending the meeting were Reeves, defendant, Fuhrer, and three narcotics investigators with the sheriff's office.
According to defendant, Reeves did most of the talking at the meeting. Reeves explained that, because it was an election year, the district attorney needed drug convictions. He asked for defendant's cooperation in other drug cases and threatened that, if defendant did not cooperate, he would have defendant's bond increased, would have defendant's fiancée arrested and her children possibly removed from her custody, and would add more charges against defendant. Reeves also threatened to charge defendant in a piecemeal fashion, using each conviction to charge defendant as a habitual offender on the subsequent conviction. Reeves claimed the case against defendant was better than another similar racketeering case in which a fifty year term of imprisonment recently was imposed. Additionally, Reeves promised that, if defendant pled guilty and cooperated, the district attorney's office and the sheriff's office would work with the judge to get probation for defendant. Reeves also promised to get defendant's bond reduced so that he would be able to post bond after the guilty plea. Reeves gave defendant fifteen minutes to make his decision and indicated this was defendant's last chance to enter into this agreement with the state.
Robert Fuhrer also testified at the hearing, corroborating defendant's testimony concerning Reeves' threats and promises. Additionally, Fuhrer testified that, during the meeting, Reeves equated the criminal justice system to a triangle, with the district attorney's office and the sheriff's office at the bottom of the triangle and the judge at the top. Although the ultimate sentencing decision was with the judge, the district attorney and the sheriff worked together to influence the judge. According to Fuhrer, Reeves promised that, if defendant cooperated with the authorities, the district attorney and the sheriff would recommend probation. When asked at the hearing why the state's agreement to recommend probation was not included in the written plea agreement, Fuhrer explained that, in the "hundreds" of cases where his client would plead guilty and in return the state agreed to recommend probation, the provision was not included in the printed guilty plea form because of the district attorney's reluctance to make the recommendation on the record. Fuhrer testified that he told defendant that not all of the agreements would be in the printed form. Fuhrer also testified that he was not familiar with the facts of the offense or the strength of the state's case and that he had agreed to represent defendant only for the bond reduction proceedings. He stated that the negotiations in this case were the most coercive he had ever experienced and that defendant was overwhelmed by the thought of multiple prosecutions and the prosecution of his fiancée. Both Fuhrer and defendant admitted that Reeves did not guarantee defendant would receive probation but merely promised to make the recommendation to the judge.[1]
*738 Reeves also testified at the hearing. He initially indicated that he had no particular memory of the meeting held at his office and that he had no recall of any statements made during the meeting, other than as reflected in the guilty plea form. When asked by the court if he agreed to work to get probation for defendant, Reeves answered, "No, sir." According to Reeves, if he had agreed to recommend probation, he would have placed the agreement in the Boykin form. He was aware the judge did not allow side deals in connection with plea agreements. Reeves stated that, in this case, the agreement was for the judge to determine the sentence and the district attorney would have a "hands off" attitude. Reeves recalled telling defendant and Fuhrer the state's evidence in this case was strong. He testified the evidence he had was sufficient for a conviction; however, he admitted the state did not have the cocaine sold by defendant which formed the basis of this conviction, and he admitted the instant charge was reported by a person who defendant had charged with issuing a worthless check. Reeves indicated he was aware of facts which would support charging defendant with racketeering or with other narcotics offenses, including the sale of drugs by defendant to an undercover confidential informer.[2]
On the day following defendant's meeting with Reeves, defendant pled guilty; and the trial court conducted an extensive and thorough Boykin colloquy. The court reviewed the terms of the written plea agreement:
1) Immunity on all prior drug offenses up to today;
2) immunity on all drug offenses committed by Allyson LeBlanc [defendant's fiancée] up to this date;
3) forfeiture of Watering Hole Lounge to Ascension Parish Sheriff's Office;
4) Return to defendant his automobile... and approx[.] $1,100.00 cash and personal belongings in Watering Hole Lounge;
5) defendant to testify before Ascension Parish Grand Jury or Petit Jury, if necessary;
6) Court ordered pre-sentence investigation under provisions of C.Cr.Pro. Art. 902;[3] and
7) 100% cooperation with Law Enforcement Personnel, by defendant[,] who will make cooperation known to Court.
(Reprinted in minutes of Aug. 17, 1989; also mentioned at guilty plea) Both sides informed the court there was no additional agreement which should be mentioned. On several occasions, the trial court reminded defendant that the sentence was up to the judge entirely and that defendant very well could receive the maximum sentence. For example, the judge warned defendant as follows:
And I want you to know that you are facing that [a sentence of thirty years imprisonment and $15,000 fine], and if anybody has [led] you to believe[,] told you, given you the impression, or whatever, that your sentence would be such and such or not more than such or that you would get probation if it turns out you're a drug addict. You know, I want you to understand that that's not the case, or evenI understand another provision of the plea agreement is that you cooperate with the sheriff's office and the district attorney's office in whatever *739 ongoing drug investigation they have going on, and even if you do that, and you may turn up to have some high profile people arrested, charged and convicted, and even if you do all that, I want you to know that there's no assurance to you. That will be considered, but there's no assurance to you that that will keep you out of jail or guarantee you probation or anything of that nature. Okay?
At the conclusion of the proceedings, Reeves indicated his office and the sheriff's office agreed to a bond reduction for defendant's post-conviction bond. After posting the reduced bond, defendant was released from custody.
On the date defendant was scheduled to be sentenced, he moved to continue the sentencing to allow time for a hearing on the motion to withdraw guilty plea, which he had filed on the previous day. The trial court denied the request for a continuance, refused to hold a hearing, and, after sentencing defendant, denied the motion to withdraw guilty plea. A review of the presentence investigation report reveals the state did not recommend probation. In an attempt to get a statement from the district attorney's office and the sheriff's office, the person preparing the report contacted both agencies. The sheriff submitted a letter in which he explains that defendant had been cooperating as agreed. As a result, some arrests had been made, which the letter describes. The sheriff concludes by asking the judge to "take the above into account as you consider a sentence for [defendant]." On behalf of the district attorney's office, Reeves responded that his office could not comment on the case as a stipulation of the guilty plea.
After reviewing the transcript of the guilty plea and receiving testimony at the hearing held on remand, the trial court issued written reasons for its denial of defendant's motion to withdraw guilty plea. The court found that defendant did not establish that his guilty plea rested in any significant degree on a promise by the prosecutor. The court noted that Reeves specifically denied promising to work to get defendant probation. The court also determined defendant's plea was voluntary.
Louisiana law provides for consideration of all plea agreement terms, even if the terms are not stipulated in the written Boykin form or during the oral guilty plea colloquy. See Lewis, 421 So.2d at 226. However, as the Supreme Court explained in State v. Manchester, 545 So.2d 528, 528-29 n. 2 (La.1989), the preferable procedure, in order to eliminate any misunderstanding concerning the terms of a plea agreement, is for the trial court in a guilty plea colloquy to have any plea bargain stated in detail on the record. As we indicated in the original appeal, the Boykin examination conducted by the judge in the instant case was superior in all respects, including the judge's attempt to firmly establish the terms of the plea agreement. Both the colloquy of the guilty plea and the written guilty plea form corroborate the testimony of Reeves and support the court's conclusion that Reeves did not promise to recommend probation. The trial court is afforded considerable latitude in evaluating the testimony of witnesses essential to rulings of law, and these factual determinations will not be disturbed in the absence of a clear showing of abuse of discretion. State v. Gomez, 433 So.2d 230, 238 (La.App. 1st Cir.), writs denied, 440 So.2d 730 & 441 So.2d 747 (La.1983). After reviewing the record, we find no abuse of discretion. The trial court's conclusion is supported by the evidence.
We also find the record supports the court's decision that the plea was voluntary. Defendant was represented by counsel both at the plea negotiations and at the guilty plea. Before the plea, the court questioned defendant extensively concerning his education, employment, health, and drug use. In response to questions by the court, defendant said that his guilty plea was not the result of threats or promises and that he was pleading guilty freely and voluntarily. At the hearing held on remand, defendant did not introduce any evidence to dispute the prosecutor's claims concerning the strength of the state's case against defendant or of any case the state *740 might have had against defendant's wife. Additionally, defendant did not establish the state failed to disclose exculpatory evidence or otherwise misrepresented the status of the case.
A guilty plea is a conviction and, therefore, is afforded a great measure of finality. Bosworth, 451 So.2d at 1074. Finding no abuse of discretion in the trial court's denial of the motion to withdraw guilty plea, we find assignment of error number one is without merit.
In the second assignment of error, defendant argues the court erred when it refused to consider defendant's additional motion to withdraw guilty plea which was filed on remand on the ground defense counsel at the guilty plea was ineffective. When the trial court denied this additional motion to withdraw guilty plea, it indicated the motion was beyond the scope of the remand. For two reasons, we find no error in the court's refusal to consider this additional motion to withdraw guilty plea. The motion was not filed before the original sentencing and is not based on the claim the plea was involuntary or the Boykin inadequate. Thus, the motion was untimely under La.C.Cr.P. art. 559(A). See State v. Parker, 581 So.2d 314, 317-319 (La.App. 1st Cir.1991). Additionally, the motion was filed after the hearing was held on remand and was not at issue in the instructions we gave for the remand. See Bosworth, 451 So.2d at 1072 n. 2. Accordingly, assignment of error number two is without merit. For similar reasons, we also reject assignment of error number four. In assignment four, defendant argues the trial court erred when it refused to reconsider its ruling on the additional motion to withdraw guilty plea.
In assignment of error number three, defendant asserts the court erred when it refused to hold a hearing on defendant's motion to correct findings of fact. After the court issued its initial written reasons for the denial of defendant's motion to withdraw guilty plea (based on the state's failure to recommend probation), defendant filed a motion to correct findings of fact. Defendant alleged the court erred when it determined defendant filed the motion to withdraw guilty plea after viewing the PSI and discovering what the sentence was going to be. Defendant asserted in the motion to correct findings of fact that he and his attorney did not view the PSI until the date of his sentencing. On the day after defendant filed the motion to correct the findings of fact, the trial court amended its written reasons to reflect the date the PSI was "made available" to defendant. Thus, the court changed at least part of its findings of fact. Defendant cites no prejudice, and we have found none, caused by the trial court's failure to find that defendant's motion was filed before viewing the PSI. Accordingly, assignment of error three is without merit.
EXCESSIVE SENTENCE
In the fifth assignment of error, defendant asserts the court erred by imposing an excessive sentence. Defendant notes the small amount of cocaine involved, his status as a first felony offender with no prior convictions, his good reputation in the community, and his steady work history.
Defendant was convicted of possession of cocaine with intent to distribute; and, thus, the court was required to impose a sentence of "a term of imprisonment at hard labor for not less than five years nor more than thirty years." Additionally, the court had discretion to impose a fine of not more than fifteen thousand dollars. La.R.S. 40:967(B)(1). Defendant's sentence of seven years at hard labor is well within the statutory requirements.
The trial judge has wide discretion, though not unbridled, in the imposition of a sentence within statutory limits. See State v. Sepulvado, 367 So.2d 762, 767 (La.1979). Article I, section 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. A sentence will be determined to be excessive if it is grossly disproportionate to the crime, or is nothing more than the needless imposition of pain and suffering. The determination turns upon the punishment and the crime in light of the harm to society and whether *741 or not the penalty is so disproportionate that it shocks our sense of justice. State v. Waguespack, 589 So.2d 1079, 1086 (La.App. 1st Cir.1991), writ denied, 596 So.2d 209 (La.1992).
Given compliance with the sentencing criteria of La.C.Cr.P. art. 894.1, the sentence will not be set aside in the absence of manifest abuse of discretion. Article 894.1 (prior to its amendment by 1991 La.Acts, No. 22) requires the trial court to weigh both aggravating and mitigating circumstances in imposing sentence. While the trial court is not required to articulate every such circumstance in imposing sentence, the record must reveal adequate consideration of the guidelines enumerated in article 894.1. Waguespack, 589 So.2d at 1086.
Before resentencing defendant on remand, the trial court indicated it was relying on the written reasons it prepared in connection with the original sentencing. In these reasons, the court acknowledged defendant's status as a first felony offender, but concluded defendant was heavily involved in the use, sale, and distribution of drugs for a long period of time based upon information included in the presentence investigation report. People who were interviewed in connection with the PSI stated they had purchased cocaine from defendant on numerous occasions. Additionally, as part of the plea agreement, defendant received immunity on other possible drug offenses. The court also noted that defendant used his business to "launder" the money from his illegal drug trade. While defendant had no previous convictions, he had an earlier arrest for possession of 280 pounds of marijuana, which was not prosecuted. The court concluded that, because of defendant's involvement in the drug business and the seriousness of the offense, failure to imprison defendant would deprecate the seriousness of the offense.
Considering the factors of article 894.1, the court determined that there was an undue risk defendant would commit another crime during a period of probation and that he was in need of correctional treatment or a custodial environment which can be provided most effectively by commitment to an institution. Because defendant had a college degree, was employed, and had a fairly normal upbringing, the court found no substantial ground tending to excuse the criminal conduct. Finding a strong possibility defendant was addicted to drugs, the court concluded the criminal conduct resulted from circumstances which were likely to occur again.
On remand, defense counsel updated the court on defendant's status since the time of the original sentencing. While defendant was out on bond, he remained gainfully employed and was lawabiding. While incarcerated, defendant maintained an excellent record. He was a trustee and was attending alcoholics anonymous and narcotics anonymous meetings. Counsel also referred to the post-sentencing bond hearing, where witnesses (defendant's mother and defendant's first wife) described defendant as a good father and hard worker.
After reviewing the reasons cited by the trial court, we conclude the court complied with the requirements of article 894.1. We further find no abuse of discretion in the court's decision to imprison defendant for seven years. Defendant's involvement in the drug business was extensive and the reasons cited by the court support the sentence chosen. The assignment of error is without merit.[4]
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] At the hearing, defendant's mother and wife also testified, partially corroborating defendant's testimony. Defendant's mother testified that, after she was not able to post the bond required for defendant's release, she received a telephone call from Reeves asking her to come to his office. At the meeting, Reeves told her that, if her son cooperated, Reeves more than likely could secure a suspended sentence for him. She also indicated that she called Reeves after her son was sentenced. When she questioned Reeves about the severity of the sentence, Reeves said, `This [seven year sentence without probation] wasn't supposed to happen." He told her to call the former district attorney who had lost the election. (R. 161) Defendant's wife (his fiancée at the time of his arrest) attended the meeting Reeves had with defendant's mother. She indicated that Reeves told her and defendant's mother that, if they bonded defendant out, the state would keep adding more charges, making it impossible for them to post the bond.
[2] The three narcotics officers who were present at the plea negotiation meeting held in Reeves' office were not called by either side to testify.
[3] The trial court extensively discussed the provisions of La.C.Cr.P. art. 902 with defendant. Briefly, article 902 provides a procedure for determining, during the presentence investigation, whether or not a defendant is a drug addict. The article allows the trial court to hold a contradictory hearing on the issue and specifies certain conditions which may be imposed should an addicted defendant be placed on probation.
[4] In this appeal, defendant does not renew an assignment he advanced in the earlier appeal, that the trial court erred when it used, to defendant's detriment, information defendant provided to the sheriff's office under a grant of immunity pursuant to the plea bargain agreement which required him to cooperate with the state.