PER CURIAM.[1]
| tAlthough defendant was only 16 years old when he shot and killed the victim, the state charged him as an adult in the 24th Judicial District Court with the crime of second degree murder in violation of R.S. 14:30.1. See La.Ch.C. art. 305(A)(1). After a bench trial in 2006, the trial court found him guilty of the lesser offense of manslaughter and sentenced him to 30 years imprisonment at hard labor. In 2008, the trial court then granted defendant an out-of-time appeal. The Fifth Circuit affirmed defendant’s conviction for manslaughter but found the term of imprisonment imposed by the trial court excessive, vacated the sentence, and remanded for resentencing. State v. Lewis, 08-1317 (La.App. 5th Cir.5/26/09), 16 So.3d 385 (Rothschild, J., dissenting). Although declining to recommend a specific sentence, the court of appeal observed “that the maximum sentencing range we could affirm for the defendant’s conviction may extend to a 20-year sentence.” Id., OS-1317 at 22, 16 So.3d at 397 (citing La. C.Cr.P. art. |2881.4)(in remanding for re-sentencing an appellate court may give direction to the trial court concerning the proper sentence to impose). We granted the state’s application to consider that decision and reverse because the conclusion of the court of appeal, that defendant’s sentence is disproportionate to the offense, appears fundamentally at odds with its finding that the evidence at trial supported the responsive verdict of manslaughter because it “was sufficient to *1075 prove second degree murder.” Lewis, 08-1317 at 13,16 So.3d at 392-93.
It was undisputed at trial that on the afternoon of March 18, 2005, a half day for students at the Metro Outreach Christian Academy in Jefferson Parish, 18-year-old Lionel Crain died from a single gunshot wound to his left temple inflicted by defendant. Defendant and Crain were students at the school, as were their respective friends Isaac Bush and Deverrick Johnson, and they had all gathered at a bus stop after school let out early to discuss smoking the marijuana defendant had in his possession. The boys decided that they needed a cigar to use as a “blunt” and Crain supplied the dollar bill used to make the purchase. The victim then left the scene briefly to check on his girlfriend who worked at a nearby restaurant. When Crain returned, he discovered that Isaac had split the cigar in half. Incensed that his dollar had, in effect, purchased only half of a cigar, Crain stripped off his t-shirt and challenged Isaac Bush to a fight. However, Deverrick Johnson intervened on Crain’s behalf and struck the first blow, punching Bush in the back of his head. Accounts varied as to whether Johnson continued to fight with Bush, or whether Crain then interceded and began swinging at Bush. However, in the end, a 22-caliber handgun concealed in the pocket of Bush’s jacket slipped out and fell to the ground. Defendant, who had watched the fight as a bystander, picked up the gun and in a manner that was sharply disputed at trial, Isfired a single fatal shot into Crain’s left temple. According to Deverrick Johnson, defendant then turned in his direction, looked him in the eye, and asked, “You want some too?”
Johnson and Isaac Bush both testified that defendant brought up his arm, aimed at the victim’s head, and without hesitation fired deliberately in what pathologist Dr. Susan Garcia, who performed the autopsy, described as an intermediate shot of somewhere between 18 and 24 inches from the victim’s left temple, as evidenced by the tell-tale powder stripling around the wound. The track of the wound, from left to right through the victim’s cerebral hemispheres, “was essentially horizontal” and somewhat forward as if the victim’s head had been turned slightly to the right. The pathologist also expressed her opinion that the shot almost certainly had been fired from Crain’s left side because it inflicted the wound to his left temple and that it was therefore highly unlikely that Crain had been advancing on defendant from the front when the weapon discharged. According to the state’s firearms expert, the gun was in good working order and had a normal trigger pull, which meant that “you have to physically pull this trigger to discharge the weapon.” In addition, the expert testified that the gun had a loaded chamber indicator and a cocked indicator, which make it “pretty obvious [when] this weapon is cocked and loaded and ready to fire.”
On the other hand, defendant testified that after Deverrick Johnson knocked Isaac Bush to the ground and the gun spilled out of his friend’s jacket, he picked up the weapon because it threatened everyone. Defendant testified that he had not brought the gun up all of the way and had not fully extended his arm when the weapon discharged accidentally. However, because he and Lionel Crain were approximately the same height, defendant could not account for how the bullet | ¿traveled left to right through the victim’s head on an essentially flat trajectory. Nevertheless, defendant denied aiming the gun at Crain and he testified that the victim was advancing on him, perhaps in an attempt to grab the weapon for himself, when the gun discharged.
*1076 At the close of the evidence, the trial court remarked on the “utterly, totally stupid, waste of not one life now .... one definitely gone ... another one that’s potentially gone forever,” and found defendant guilty of the lesser offense and responsive verdict of manslaughter. The court thereby spared defendant from a mandatory life sentence at hard labor without parole that would result from a conviction for second degree murder. La. R.S. 14:30.1(B). However, when it turned to sentencing, the court did not lose sight of the fact that defendant had claimed a human life under circumstances for which only the recklessness and immaturity of youth could account. The court thus noted at sentencing that, “We’re talking about some marijuana and a one dollar cigar,” and that, while “we have a sixteen-year-old tried as an adult,” 16-year-old juveniles:
still think with sixteen-year-old brains. They don’t think with thirty-year-old brains. If they thought with forty-or fifty-year-old brains, they wouldn’t be fighting over a one dollar cigar with marijuana. But a life was lost, a young life that was a value to the people who loved him, and he lost his chance. So I don’t take it lightly at all. I think a sentence which will serve the purpose of justice in this matter, and ... because any lesser sentence ... would deprecate the seriousness of the crime, is thirty years at hard labor.
On appeal, defendant not only challenged his sentence but also argued that the evidence did not support the court’s verdict of manslaughter or any other responsive verdict because the only rational interpretation of the evidence at trial was that he retrieved the gun to insure that no one got hurt and that the weapon then discharged accidentally. Lewis, 08-1317 at 8, 16 So.3d at 390. Addressing that argument first, the court of appeal agreed with the state that because the | r,evidence at trial was sufficient to prove the charged offense of second degree murder, a specific intent homicide, it was also sufficient to support a conviction for manslaughter. In that regard, the court of appeal followed settled jurisprudence that specific intent to kill may be inferred from the act of pointing a gun and firing at a person in close proximity. See, e.g., See State v. Tassin, 536 So.2d 402, 411 (La.1988)(pointing and firing a gun at point-blank range supports an inference of specific intent to kill); State v. Noble, 425 So.2d 734, 736 (La.1983)(same). The court of appeal also applied the settled rule on review of the sufficiency of evidence that “the fact finder is given much discretion in determinations of credibility and evidence, and the reviewing court will only impinge on his discretion to the extent necessary to guarantee the fundamental protection of due process of law.” Lewis, 08-1317 at 10, 16 So.3d at 391 (citing State v. Mussall, 523 So.2d 1305, 1309 (La.1988)). Thus, with respect to whether defendant aimed and fired the gun deliberately at the victim’s head from close range, as Derrick Johnson and Isaac Bush testified, or accidentally before he brought the weapon all of the way up, as defendant claimed, the Fifth Circuit could not say that the trial court “was clearly wrong in its evaluation of the witnesses’ testimony and its credibility call.” Id., 08-1317 at 13, 16 So.3d at 392. Given that factual premise, the majority concluded that although defendant did not claim at trial that he had been provoked and fired in the heat of passion, or make any claim on appeal that the evidence otherwise revealed those essentially mitigatory factors which may reduce the degree of a homicide from murder to manslaughter, State v. Lombard, 486 So.2d 106, 110 (La.1986), the evidence at trial supported the verdict of manslaughter because it could have sustained a verdict for second degree murder *1077 defined as a specific intent homicide. Lewis, 08-1317 at 10, 16 So.3d at 391 (“When a defendant does not object to a legislatively responsive verdict, the defendant’s conviction will not be reversed, whether or not that verdict is supported by the evidence, as long as the evidence is sufficient to support the offense charged.”) (citing State ex rel. Elaire v. Blackburn, 424 So.2d 246, 252 (La.1982)).
On the other hand, the majority on the court of appeal panel found that the record did not support the trial court’s decision to impose a sentence of 30 years at hard labor. The majority conceded at the outset that “[o]n appellate review of sentence, the only relevant question is ‘whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.’ ” Lewis, 08-1317 at 15, 16 So.3d at 394 (quoting State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608) (per curiam). However, after conducting a “representative sampling” of cases in which an initial charge of second degree resulted in a conviction for manslaughter, the majority concluded that “[i]n those cases involving a gun, where the courts upheld sentences in the 29 to 40-year range, the circumstances of the crime were more shocking than the defendant’s offense.” Lewis, 08-1317 at 19, 16 So.3d at 396. The majority thus determined that “sentences within the 30-year range or higher are constitutionally acceptable for more serious offenders with less chance of rehabilitation.” Id., 08-1317 at 21, 16 So.3d at 397. Defendant did not belong among those offenders, the majority observed, because there was no evidence of premeditation or “of a plan, scheme, motive, or specific intent formed before the defendant picked up the gun during the fight.” Id., 08-1317 at 21, 16 So.3d at 397. In addition, as opposed to other cases in which the offender fired multiple shots into the victim or fired randomly and wantonly into a crowd of people, id., 08-1317 at 18, 16 So.3d at 395 (citing Instate v. Jones, 05-0735, pp. 10-11 (La.App. 5th Cir.2/27/06), 924 So.2d 1113, 1118-19 (defendant shot victim four times in the face and then fled the state), writ denied, 07-0151 (La.10/26/07), 966 So.2d 567; State v. Weatherspoon, 06-0539, p. 33 (La.App. 5th Cir.12/12/06), 948 So.2d 215, 235-36 (16-year-old offender fired several shots into a crowd killing a 14-year-old boy), writ denied, 07-0462 (La.10/12/07), 965 So.2d 398), in the present case defendant fired only a single shot. Moreover, defendant had no history of violence or any other juvenile offenses. “Given these factors, as well as other cases speaking to this subject,” the majority concluded, “the trial judge abused his discretion in sentencing the defendant to a sentence that was 10 years short of the maximum.” Id., 08-1317 at 21-22, 16 So.3d at 397. The court of appeal thus vacated the sentence, remanded for resentencing, and, in effect, directed the court to impose a sentence not greater than 20 years imprisonment at hard labor.
Dissenting in part, Judge Rothschild, agreed with the majority in affirming defendant’s conviction for manslaughter but disagreed with the decision to vacate defendant’s sentence and remand for resen-tencing. Judge Rothschild found no abuse of the trial court’s sentencing discretion, in large measure for the same reason that he agreed in affirming defendant’s conviction. As the majority had also found, “the evidence presented at trial supported a verdict of second degree murder, which carries a mandatory life sentence. La.R.S. 14:30.1” Lewis, 08-1317 at 2, 16 So.3d at 398 (Rothschild, J., dissenting in part).
We agree with Judge Rothschild that the proper perspective from which to approach sentence review in the present *1078 case accords paramount importance to the nature of the conduct proved at trial. While comparative proportionality review taking into account sentences imposed in other similar cases is a ^component of sentence review under La. Const, art. I, § 20, such review serves only to “set[ ] the stage” for the “later inquiry into the nature of the offender and the offense.” State v. Telsee, 425 So.2d 1251, 1254 (La.1983). In considering the nature of the offense, both the trial court and reviewing court may assess whether the crime for which defendant has been convicted adequately describes his conduct when the conviction is for a lesser included responsive offense to the crime charged. State v. Landos, 419 So.2d 475, 478 (La.1982)(“In a case such as this, where the offense to which the defendant has pled guilty inadequately describes his conduct, we find no abuse of the trial court’s great discretion in imposing the maximum sentence possible for the crime to which the guilty plea is entered.”); see also State v. Stevens, 06-0818, p. 5 (La.App. 3rd Cir.1/31/07), 949 So.2d 597, 601 (quoting Lanclos); State v. Waguespadc, 589 So.2d 1079, 1086 (La.App. 1st Cir.1991)(same). This general sentencing principle accommodates Louisiana’s responsive verdict scheme which provides the fact finder, ordinarily a jury in felony cases, the discretion to return verdicts for lesser included offenses against the weight of the evidence presented at trial. State v. Porter, 93-1106, p. 4 (La.7/5/94), 639 So.2d 1137, 1140 (“Treating the jury’s prerogative to return a responsive verdict similar to the jury’s power of nullification, this court has consistently held that the jury must be given the option to convict the defendant of the lesser offense, even though the evidence clearly and overwhelmingly supported a conviction of the charged offense.”).
In the present case, the fact finder was the trial court, not a jury, and its remarks in returning the verdict of manslaughter reflected its awareness that its verdict would have profound sentencing consequences, as the charged offense of second degree murder carried a mandatory sentence of life imprisonment without 19benefit of parole, probation, or suspension of sentence. That awareness prompted its remark that one life had already been lost and another (ie. defendant’s) hung in the balance. It also apparently prompted the court’s return of a verdict for the lesser offense of manslaughter, thereby accounting for the differences between the brain of a 16-year-old and an adult which may result in different degrees of culpability for the same act. Cf. Graham v. Florida, 560 U.S. —, —, 130 S.Ct. 2011, 2026, 176 L.Ed.2d 825 (2010) (“[Bjecause juveniles have lessened culpability they are less deserving of the most severe punishments .... [Developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds.”).
However, the circumstances surrounding the death of Lionel Crain clearly did not compel that result. Mutual combat between two willing antagonists resulting in the death of one of the participants may reduce the culpability of the offense from murder to manslaughter. Lombard, 486 So.2d at 110; see also W.R. LaFave, A.W. Scott, Substantive Criminal Law, § 7.10, pp. 256-57 (1986) (“Where two persons willingly engage in mutual combat, and during the fight one kills the other as the result of an intention to do so formed during the struggle, the homicide has long been held to be manslaughter, and not murder, the notion being that the suddenness of the occasion, rather than some provocation by the victim, mitigates the intentional killing to something less than murder.”); cf. 18 U.S.C. § 1112(a) (defining voluntary manslaughter as the unlaw *1079 ful killing of a human being without malice “[u]pon a sudden quarrel or heat of passion”). Even then, the common law doctrine of “sudden quarrel,” or “chance medley,” as a ground for reducing murder to manslaughter presupposed that neither side sought or took an undue advantage, and in any event did not apply to interve-nors taking up the cause |inof one of the participants. See United States v. Martinez, 988 F.2d 685, 691-96 (7th Cir.1993)(discussing evolution of common law manslaughter, the origins, development, and demise of the “chance medley” doctrine, and the evolution of the heat of passion doctrine defining voluntary manslaughter as a lesser degree of homicide than murder).
In the present case, as described by Deverrick Johnson, the -victim appeared all too willing to fight anybody over the dollar cigar as he ripped off his t-shirt before challenging Isaac Bush to a fistfight. However, in the melee that followed, defendant was not a combatant but a bystander. Defendant acknowledged in his testimony that Lionel Crain did nothing to provoke him, either by hitting him or his lifelong friend, Isaac Bush, as Bush grappled with Deverrick Johnson. Lionel Crain swung at Bush but, as far as defendant could tell from his vantage point, “he ain’t never hit him.” Defendant testified that he approached the victim to make sure Crain did not “jump Isaac,” and “that’s when the gun came out.” However, his claim for what happened next, which he repeated at sentencing, that the gun fired accidentally after he scooped it off the ground, defied the weight of the evidence presented at trial, not only by the eyewitnesses on the scene but also by the state’s experts, that he held Isaac Bush’s gun up near the left temple of Crain’s head when the victim was turned slightly to the right and deliberately pulled the trigger of a weapon cocked and ready to fire, sending the bullet on a flat trajectory through the victim’s brain. Those circumstances, which were bound to increase the odds of a lethal result from a single shot,[2] described the offense of murder, not ^manslaughter. By returning the lesser verdict of manslaughter even against the weight of the evidence that defendant committed a second degree murder, and thereby taking into account that the 16-year-old brain does not work in the same manner as an adult brain, which would presumably grasp the folly of embarking on lethal conflict over a one dollar cigar, the trial court had already accorded full weight to the mitigating circumstance of defendant’s youth when it then turned to the matter of sentence. Nevertheless, Louisiana law allowed for prosecution of defendant as an adult and thus held him accountable, and may hold him accountable, as an adult for the killing of Lionel Crain. Cf. Graham v. Florida, — U.S. at —, 130 S.Ct. at 2027 (For purposes of the Eighth Amendment, which precludes life imprisonment of a juvenile offender for any crime other than murder, “[tjhere is a line between homicide and other serious violent offenses against the individual.”)(internal quotation marks and citation omitted). Viewed from this perspective, the trial court’s sentence *1080 of 30 years imprisonment at hard labor may be only 10 years short of the maximum term of imprisonment for the offense of manslaughter for which defendant has been convicted but it falls far short of the life term which the Louisiana legislature has deemed adequate to describe the moral culpability of his conduct.
We therefore find no abuse of its broad sentencing discretion by the trial court in determining that a term of imprisonment less than 30 years at hard labor would deprecate the serious of the offense. The penalty imposed by the court is not grossly disproportionate to the offense in which the victim was killed; nor does it constitute a needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355, 357 (La.1980); cf. Graham, — U.S. at —, 130 S.Ct. at 2028 (“A sentence lacking any legitimate penological justification is by its nature | ^disproportionate to the offense.”). Accordingly, the decision of the court of appeal is affirmed to the extent that it upholds defendant’s conviction for manslaughter but reversed insofar as it vacates the sentence imposed by the trial court. Defendant’s sentence of 30 years imprisonment at hard labor is reinstated and this case is remanded to the trial court for execution of sentence.
DECISION OF COURT OF APPEAL AFFIRMED IN PART REVERSED IN PART; DEFENDANT’S SENTENCE REINSTATED; CASE REMANDED.

. Retired Judge Philip C. Ciaccio, assigned as Justice ad hoc, sitting for Chief Justice Catherine D. Kimball.

. At sentencing, the victim’s father, Keith Zarders, read a prepared statement into the record in which he recalled his reaction when he and his wife received a call from the school principal that his son had been shot, that it did not look good, and that they should meet him at the hospital. "Being an ex-deputy and military member at the time,” Mr. Zarders explained, “I was wondering where he was shot because being trained in that field of work you're trained to shoot center mass.... I remember saying, Please, God, let it be anywhere but the head. Lionel, being eighteen years old, I felt any other wound, he could sustain.”