Judgment rendered June 28, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,143-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

DILLON FLOYD BAZAR                          Appellant

* * * * *

Appealed from the
Second Judicial District Court for the
Parish of Bienville, Louisiana
Trial Court No. 50,192

Honorable Charles Glenn Fallin, Judge

* * * * *

ROBERT A. MOORE                             Counsel for Appellant


DANIEL W. NEWELL                            Counsel for Appellee
District Attorney

GRAYDON K. KITCHENS, III
TAMMY LENN JUMP
JENNIFER POOL McKAY
PERRIN NELSON SMITH, JR.
Assistant District Attorneys

* * * * *


Before ROBINSON, HUNTER, and ELLENDER, JJ.

**ELLENDER, J.**

Dillon Bazar appeals a five-year hard labor sentence following his conviction of negligent homicide, La. R.S. 14:32. For the reasons expressed, we affirm.

**FACTS**

On April 19, 2019, Dillon Bazar received an unexpected day off work and decided to spend it fishing. Once at a fishing hole in rural Bienville Parish, Bazar was joined by his longtime friends, Thomas Bolyer and Huey Harvard. These three young men spent a couple of hours hanging out, drinking beer, and trying to reel in a catch. After not having much luck, they decided to go back to Bazar's house where they sat around for a few hours and drank more beer. Bazar admitted he consumed two beers while fishing and another two beers while lounging at his house. Around six o'clock that evening, Bazar, Bolyer, and Harvard decided to go eat at the Armadillo Grill in nearby Castor. While at the grill, they partook of two-for-one margaritas, with each person consuming two margaritas apiece. The trio spent approximately an hour and a half at the grill visiting and hanging out before going back to Bazar's house.

After a brief stop at Bazar's, they proceeded on to Harvard's house to meet up with friends and shoot pool with Bazar driving alone in his truck and Bolyer driving his own truck with Harvard as a passenger. On the way to Harvard's house they each took different routes, with Bolyer claiming he was trying to beat Bazar to that location. While driving down Layfield Road, Bolyer ran his truck off of the roadway striking a speed limit sign and colliding with a fence. The incident caused extensive damage to Bolyer's truck, which ultimately came to rest in the roadside ditch. Bolyer

immediately called Bazar who came to the scene and used his truck to pull Bolyer out of the ditch.

Once out of the ditch and back on the roadway, they proceeded to Harvard's house via Hwy. 4, with Bazar leading the way driving alone in his Ford F-150 and Bolyer and Harvard following in Bolyer's truck. While in route, Bazar was involved in a head-on collision with Karen Caldwell. Bazar was traveling east on Hwy. 4 while Caldwell was traveling west in her 2001 Pontiac Grand Prix. As a result of the accident, Bazar sustained minor injuries to his foot while Caldwell sustained fatal injuries and ultimately died at the scene.

Once emergency personnel arrived shortly thereafter, Bazar was placed in the back of a Bienville Parish Sheriff's Office unit. Trooper Justin Wardell of the Louisiana State Police ("LSP") arrived on the scene at 9:36 p.m. and began to question Bazar about the accident. Bazar stated Caldwell had veered into his lane of travel, which prompted him to swerve, but he ultimately could not avoid her vehicle. He also informed Tpr. Wardell he had consumed two alcoholic beverages at the Armadillo Grill earlier that day. While conducting the interview, Tpr. Wardell observed an "overwhelmingly strong" smell of alcohol coming from Bazar's breath and noticed Bazar's eyes were extremely red and bloodshot. These signs prompted Tpr. Wardell to conduct a Horizontal Gaze Nystagmus ("HGN") test of Bazar.[1] After observing validated clues in each of Bazar's eyes during the test, Tpr. Wardell asked fellow Troopers Moore and Massey to transport Bazar to the nearest location for Intoxilyzer 9000 testing. Bazar

---

[1] Tpr. Wardell added in his report he did not ask Bazar to perform any tests which required walking or standing for fear of aggravating Bazar's foot injury.

2

was then brought to the Bienville Parish Substation where he willingly provided a breath sample which resulted in a blood alcohol content ("BAC") of 0.095g%.[2] Bazar was then transported and booked into the Bienville Parish Jail.

Back at the scene, Tpr. Wardell continued to investigate the cause of the accident. As part of his investigation, Tpr. Wardell received witness statements from Bolyer and Harvard who were traveling behind Bazar on Hwy. 4 at the time of the accident and were the first to arrive on the scene. Both Bolyer and Harvard claimed they had observed Caldwell crossing the center line of the roadway which caused Bazar to crash into her; however, Tpr. Wardell reached a different conclusion.

The accident report reflected the impact between Bazar's truck and Caldwell's car caused Bazar's truck to slide violently in the roadway, yawing counterclockwise before overturning. After completing a full revolution, Bazar's truck came to rest back on its wheels in the middle of the roadway. As to Caldwell's car, the report showed it spun clockwise after impact before coming to rest in the roadside ditch. Tpr. Wardell ultimately concluded the accident resulted from Bazar swerving into the lane of Caldwell prompting the head-on collision of their vehicles. In the report, he noted several observations in reaching this conclusion: (1) gouge marks and excess fluid spills on the roadway signifying the point of impact were only found in Caldwell's lane; (2) a yaw mark was found close to the centerline in Bazar's lane, at the end of which was the "tip point" which caused Bazar's truck to roll over; (3) heavy damage to the roof of Bazar's vehicle;

_____

[2] This breath sample was given at 11:18 p.m., approximately 2 hours after the head-on collision.

3

and (4) severe damage to the front left quadrants of both vehicles. Regarding the roadway where the crash occurred, Tpr. Wardell noted the road was straight and level with a speed limit of 45 mph. Further, the lanes in which Bazar and Caldwell traveled were separated by a solid, double yellow no passing line. The report also included Tpr. Wardell found one open beer can (still containing liquid) on Bazar's passenger floorboard and one closed beer can in his back seat.[3]

Trooper Alan VerHoef [4] investigated the accident and prepared a narrative supplement with his findings. After visiting the scene and examining the evidence, VerHoef likewise concluded Bazar's truck was eastbound and crossed the centerline into the westbound lane causing him to crash into Caldwell's car. Further, the gouge marks, spilled fluids, and tire marks indicated the area of impact was several feet within Caldwell's lane. As part of his investigation, VerHoef examined both vehicles involved in the crash and downloaded the data from the airbag control modules in each. This data showed Bazar was speeding at approximately 52 mph at the time of the crash while Caldwell was traveling the posted speed limit of 45 mph. The data also showed Bazar did not brake prior to impact. VerHoef ultimately concluded Bazar crossed the centerline and the impact between his truck and Caldwell's car occurred well within Caldwell's lane.

## PROCEDURAL HISTORY

On May 1, 2019, Bazar was charged by bill of information with vehicular homicide, La. R.S. 14:31.1. Jury trial commenced on April 25,

---

[3] Bazar admitted he had a few sips of beer from this can prior to the accident.

[4] At the time of the accident and investigation, Alan VerHoef was a Senior Trooper and Troop G Accident Reconstructionist for the Louisiana State Police.

4

2022, and Bazar was ultimately convicted by a 6-person jury of the responsive verdict of negligent homicide.

Bazar appeared for sentencing on May 24, 2022.[5] To begin, the trial court first noted Bazar's young age of 23 at the time of the offense and reviewed the negligent homicide statute. Second, the trial court articulated its conclusion that Bazar had no doubt crossed into Caldwell's lane and caused the head-on collision. The trial court emphasized this same conclusion was reached by both LSP Troopers who investigated the accident and examined all of the evidence.

Next, the trial court stated its concern for the lack of remorse Bazar had shown for the death of Caldwell both during trial and in the presentence investigation report. The trial court pointed out Bazar never stated he was sorry or expressed any type of emotion regarding Caldwell's death, with Bazar giving the impression he was not at fault. Lastly, the trial court indicated its review of the sentencing guidelines found in La. C. Cr. P. art. 894.1. The following sections were noted as particularly applicable to Bazar's case: A(3), which guides the court if a lesser sentence would deprecate the seriousness of the offense; B(9), which gives weight to whether the offense resulted in significant injury to the victim; and B(21), which covers all aggravating circumstances.

Following these findings, Bazar was sentenced to the maximum allowed by statute, five years at hard labor, with credit for time served (approximately one month) along with a $5,000 fine. After trial, Bazar filed

_____

[5] Bazar represented at sentencing that he would not be appealing his conviction and waived his right to do so.

a motion to reconsider sentence, which was heard and subsequently denied by the trial court on July 13, 2022. Bazar then filed this appeal.

**DISCUSSION**

In his sole assignment of error, Bazar asserts his five-year maximum hard labor sentence is unconstitutionally excessive given the circumstances. In support of this argument, Bazar points out his young age at the time of the offense and his lack of criminal history. He also submits he was gainfully employed, engaged to be married, a father, and a stable and productive member of society.

Bazar concedes his BAC was above the legal limit at the time of the accident, but he argues it was still well below the legislative threshold of 0.20g% for "crimes of violence" under Louisiana law, *See* La. R.S. 14:2B(46). Bazar further argues there was no evidence he was an alcoholic, heavy drinker, or had a history of driving while intoxicated. Additionally, Bazar also concedes he was speeding at the time of the accident, but, he argues, there was no evidence he was driving recklessly or in any way which would show a gross deviation from the standard of care.

In reviewing a sentence for excessiveness, an appellate court uses a two-step process. First, the record must reflect the trial court took the criteria set forth in La. C. Cr. P. art. 894.1 into account. The goal of La. C. Cr. P. art. 894.1 is to articulate an adequate factual basis for the sentence, not rigid or mechanical compliance with its provisions. *State v. Lanclos*, 419 So. 2d 475 (La. 1982). The trial court is not required to list every aggravating or mitigating circumstance, so long as it adequately considered them in particularizing the sentence to the defendant. *State v. Smith*, 433 So. 2d 688 (La. 1983). The important elements which should be considered are

6

the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. Trotter*, 54,496 (La. App. 2 Cir. 6/29/22), 342 So. 3d 1116.

The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Trotter*, *supra*. A trial judge is the in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. *State v. Trotter*, *supra*; *State v. Bell*, 53,712 (La. App. 2 Cir. 1/13/21), 310 So. 3d 307. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Trotter*, *supra*; *State v. Bell*, *supra*.

Bazar was convicted of negligent homicide, which is defined in La. R.S. 14:32A(1) as the killing of a human being by criminal negligence. Whoever commits the crime of negligent homicide shall be imprisoned with or without hard labor for not more than five years, fined not more than $5,000, or both. La. R.S. 14:32C(1).

Prior to sentencing Bazar, the trial court specifically pointed out it had reviewed the sentencing guidelines found in La. C. Cr. P. art. 894.1. Further, the court referenced, on the record, three sections of Art. 894.1 it found particularly applicable to Bazar's conduct. First, the trial court referenced section A(3), which instructs the court to impose a sentence of imprisonment if a lesser sentence will deprecate the seriousness of the

7

defendant's crime. Second, the trial court referenced section B(9), which instructs the trial court to give weight to whether the offense resulted in a significant, permanent injury to the victim when determining whether a suspension of sentence or probation is needed. Lastly, the trial court discussed section B(21), which encourages the trial court to give weight to any other aggravating circumstances. The trial court pointed out in Bazar's case, the aggravating circumstances were the death of the victim, Caldwell, and Bazar's lack of remorse and acceptance of responsibility for her death.

Based on these references to Art. 894.1 and the trial court's specific discussion of three of the sections, it is clear the trial court took Art. 894.1 into account when sentencing Bazar. Additionally, several of the factors articulated by the trial court were also set forth by the Louisiana Supreme Court in *Jones* as important elements to be considered when reviewing a sentence for excessiveness. The trial court here properly and thoroughly took the criteria set forth in La. C. Cr. P. art. 894.1 into account while sentencing Bazar.

The second step, in reviewing a sentence for excessiveness, is a determination of whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the severity of the crime or nothing more than a purposelessness and needless infliction of pain and suffering. *State v. Trotter*, *supra*; *State v. Lobato*, 603 So. 2d 739 (La. 1992). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166. As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst

8

offenses. *State v. Cozzetto*, 07-2031 (La. 2/15/08), 974 So. 2d 665*; State v. Gibson*, 54,400 (La. App. 2 Cir. 5/25/22), 338 So. 3d 1260, *writ denied*, 22-00978 (La. 3/7/23), 356 So. 3d 1053.

In support of his assignment of error, Bazar asserts he is not the "worst offender" and this is not the "worst offense" for which a maximum sentence or near maximum sentence is reserved. Further, Bazar points to the fact he was a first-time felony offender and, as a result, the maximum five-year sentence imposed was an abuse of discretion by the trial court. We disagree. A trial court is not required to render a suspended sentence or probation on a first felony offense. *State v. Parker*, 42,947 (La. App. 2 Cir. 1/30/08), 974 So. 2d 844; *State v. Bradford*, 29,519 (La. App. 2 Cir. 4/2/97), 691 So. 2d 864. The judge may consider whatever factors and evidence he deems important to a determination of the best interest of the public and the defendant. *State v. Parker*, *supra*; *State v. Bradford*, *supra*. The record clearly shows the trial court considered many factors pertaining to Bazar before sentencing him with the best interest of the public and Bazar in mind. We find nothing to support the assertion the trial court abused its discretion in sentencing Bazar.

Turning to whether the sentence is constitutionally excessive, Bazar was sentenced to five years at hard labor with a $5,000 fine after being convicted of negligent homicide. Bazar was initially charged with vehicular homicide. As stated by the Supreme Court in *State v. Lewis*, 09-1404 (La. 10/22/10), 48 So. 3d 1073, 1078, and by this court in *State v. Gaines*, 52,536 (La. App. 2 Cir. 2/27/19), 266 So. 3d 948, 951, *writ denied*, 19-00773 (La. 9/17/19), 279 So. 3d 379, in considering the nature of an offense for purposes of sentencing, "both the trial court and the reviewing court may

9

assess whether the crime for which the defendant has been convicted adequately describes his conduct when the conviction is for a lesser included responsive verdict to the crime charged." Treating the jury's prerogative to return a responsive verdict similar to the jury's power of nullification, this court has consistently held that the jury must be given the option to convict the defendant of the lesser offense, even though the evidence clearly and overwhelmingly supported a conviction of the charged offense. *State v. Lewis, supra.* Consequently, the trial court here, as well as this court, may consider whether Bazar's conviction adequately reflects his conduct.

The record supports Bazar got behind the wheel of a full-sized pickup truck after he had spent the day drinking. By his own admission, Bazar had at least four beers earlier that day, and two margaritas just hours before the accident. While also having sipped on yet another beer on his last drive, the physical evidence strongly suggests Bazar, who was speeding, swerved his truck into oncoming traffic colliding head-on with another vehicle without braking. This violent collision ultimately resulted in a tragic loss of life.

Although he was only convicted of the responsive verdict of negligent homicide, the record suggests Bazar's conduct supported the essential elements of vehicular homicide, which carries a minimum sentence of 5 years and a maximum sentence of 30 years. Vehicular homicide, La. R.S. 14:32.1, is defined in pertinent part as:

> The killing of a human being caused proximately or caused directly by an offender engaged in the operation of, or in the actual physical control of, any motor vehicle … or any other means of conveyance, whether or not the offender had the intent to cause death or great bodily harm, whenever any of the following conditions exist and such a condition was a contributing factor to the killing:

>     (2) the operator's blood alcohol concentration is 0.08
>     percent or more by weight based upon grams of alcohol
>     per one hundred cubic centimeters of blood.

Here, Bazar was operating a pickup truck on a public roadway while intoxicated when he collided head-on with Caldwell. Caldwell died as a result of the collision. After failing the HGN test at the scene, Bazar was transferred to a different location for Intoxilyzer 9000 testing where his breath sample registered a BAC of 0.095g%. Considering this breath test was conducted approximately two hours after the crash, the state's expert, Emily Bouso, opined Bazar's BAC was likely in the 0.11g% - 0.13g% range at the time of the accident. Additionally, both LSP Troopers who investigated the accident, as well as the trial court judge, concluded the collision resulted from Bazar swerving into Caldwell's lane of travel. Bazar, Bolyer, and Harvard, who had been drinking all day, each claimed Caldwell crossed into Bazar's lane; however, the unrefuted physical evidence belies their assertions.

While the jury was free to return a verdict responsive to the charged offense, the trial court was also justified in considering the actual conduct established at trial in imposing sentence. Bazar received a substantial benefit by the jury's returning a responsive verdict of negligent homicide and, as a result, his potential exposure was reduced from 30 years to only 5 years. This benefit, coupled with the tragic loss of Karen Caldwell, and Bazar's utter lack of remorse for her death, justifies the sentence imposed. We find the five-year maximum sentence is not constitutionally excessive, does not shock the sense of justice, nor is it a needless infliction of pain and suffering.

Bazar's assignment of error lacks merit.

11

## CONCLUSION

Finally, we have reviewed the entire record and find nothing we consider to be error patent. La. C. Cr. P. art. 920 (2). For the reasons expressed, we affirm the conviction and sentence.

**AFFIRMED.**